THE ALNWICK.

(District Court, D. Massachusetts. February 28, 1905.)

No. 1,570.

SHIPPING—DAMAGE TO CARGO—TIME OF DELIVERY.

A provision of a bill of lading requiring the consignee to be ready to receive the cargo as soon as the vessel was ready to unload, in default of which she was authorized to land, warehouse, or lighter the same at the consignee's risk, does not relieve her from liability for damages aris-ing from her failure to reasonably protect perishable goods landed on a dock upon a claim of delivery, where she refused to permit the consignee's agents to remove them, although having no claim thereon for freight.

In Admiralty. Suit to recover for damage to cargo.

Carver & Blodgett, for libelant.
Convers & Kirlin and Charles R. Hickox, for claimant.

LOWELL, District Judge. This was a libel by one Pastene against the steamer Alnwick for damage to a consignment of garlic. The sev-enth clause of the bill of lading reads as follows:

"Simultaneously with the Ship being ready to unload the above-mentioned Goods, or any part thereof, the Consignee of the said Goods is hereby bound to be ready to receive the same from the Ship's side, either on the Wharf or Quay at which the Ship may lie for discharge, or into Lighters provided with a sufficient number of men to receive and stow the said Goods therein, and in default thereof, the Master or Agent of the Ship, and the Collector of above port are hereby authorized to enter the said Goods at the Customhouse, and land, warehouse, or place them in Lighter, without notice to and at the risk and expense of the said Consignee of the Goods after they leave the Deck of the Ship. The Collector of the Port of Discharge being hereby authorized to grant a general order for discharge immediately after entry of the Ship. Steamer to work at night if required by Owners, Steamer paying any extra expense incurred thereby."

The garlic was shipped at Naples in good condition, and arrived in good condition at Boston. I find that it was landed on the wharf between December 30, 1903, and January 1, 1904. Probably it was all out of the ship on Thursday, December 31st, but I am inclined to think it was not sorted for delivery until January 2d. At the time it was actually placed on the wharf the thermometer was about

freezing, but on Saturday, January 2d, the thermometer fell below zero, and the garlic was frozen, as I find, on the afternoon of that day. I find that the garlic was put in a place which, without further protection, was unsuitable for the deposit of perishable articles, unless the same were to be removed immediately and without an intervening night. It follows that, if the delay in removal be chargeable to the vessel, then the vessel is liable for the damage caused by its negligence.

I find that Pastene's teamsters went on Saturday to take away the garlic, and that delivery was then refused them by Dwyer, a shipping clerk, who represented the Alnwick, because, as Dwyer said, the garlic had not yet been weighed by the customs officers. Dwyer denied this refusal, though not very strongly. Having heard the witnesses, I believe the teamsters. As indicating the control assumed by the ship, it is to be noted that on Monday, January 4th, delivery was again refused Pastene's teamsters unless they would give a receipt for garlic in good condition. If the vessel refused delivery at any time to the consignee, the refusal must have been based upon a supposed right to possess and control the garlic. If the garlic was then in the possession and control of the vessel, it had not then been so placed at the disposition of the consignee as to free the vessel from the duty of exercising reasonable care in its keeping. If the vessel intended to set up a delivery of the cargo made in accordance with article 7 of the bill of lading, it could not retain possession of cargo on which there was no claim for freight, nor could it hinder the consignee from dealing with it. If the customs officers objected to the removal, they might interfere, but the vessel is not protected by playing the customs officer. If the law placed upon the vessel the duty of hindering delivery before weighing, then the law prevented the vessel from complying with the conditions of article 7 until after weighing, and therefore the vessel was left subject to a carrier's ordinary duties. Article 7 gives a vessel no right to let the cargo freeze, while excluding the consignee from its control. The deposition of Hall was taken after the trial, without leave of court, and is excluded, of course.

Decree for the libelant for $307.77 and costs.